UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

NIKO S. SIMMONS,

        Plaintiff,        Case No. 1:14-cv-1242

v.        Honorable Paul L. Maloney

BLAINE LAFLER et al.,

        Defendants.
_____/

## AMENDED OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, on February 25, 2015, the Court dismissed Plaintiff's action against Defendants Lafler, Tabor, Klatt, Curtin, Brinkley, and Rogers. Plaintiff subsequently filed a motion for reconsideration and, upon review, the Court has determined that Plaintiff states a possible claim against Rogers. Thus, Defendants Lafler, Tabor, Klatt, Curtin, and Brinkley will be dismissed. The Court will order service of the complaint on

Defendants Rogers and Corizon.

**Factual Allegations**

Plaintiff Niko S. Simmons is incarcerated by the Michigan Department of Corrections (MDOC) at Kinross Correctional Facility (KCF), though some the events about which he complains occurred while he was housed at Carson City Correctional Facility (DRF) and Oaks Correctional Facility (ECF). Construing the complaint liberally, as the Court must, Plaintiff sues the MDOC's medical provider, Corizon (successor to "Corrections Medical Services" (CMS) and "Prison Health Services" (PHS)),[1] as well as various MDOC employees. Some of those employees are located at DRF: Warden Blaine Lafler, Resident Unit Manager (RUM) Mark Tabor and Assistant Resident Unit Supervisor (ARUS) Russel Klatt. Others are located at ECF: Warden Cindi Curtin and ARUS Wendy M. Brinkley. Finally, he sues Nurse Practitioner Penny Rogers.

Plaintiff's complaint concerns the following events:

- MRSA infection. In 2004-2005, Plaintiff was treated for gunshot wounds at an MDOC facility. A nurse who was treating Plaintiff negligently failed to change his gloves after treating another inmate and infected Plaintiff with "MRSA."[2]

- Loss of job. In 2009, Plaintiff was terminated from a work assignment. He claims that he is entitled to back pay.

- Misconduct conviction. In March 2010, while Plaintiff was incarcerated at DRF, he was

---

[1] Although Plaintiff does not expressly name Corizon as a defendant, he does name PHS and CMS, and in the body of the complaint, he alleges that these organizations have merged into Corizon. Thus, insofar as the complaint makes any allegations regarding PHS and CMS, the Court liberally construes the complaint as asserting claims against Corizon.

[2] MRSA stands for Methicillin-resistant *Staphylococcus aureus*, which is a bacteria resistant to many antibiotics. *See* http://www.cdc.gov/mrsa/ (visited Feb. 12, 2015).

convicted of a misconduct. He sought a rehearing and his request was granted on June 7, 2010, one day before he was transferred to ECF. He received another hearing at ECF and was again found guilty, allegedly because the hearing investigator at DRF would not cooperate with the hearing investigator at ECF.

- Security classification. In April 2010, Plaintiff requested reclassification from Level IV[3] to a lower security level, which he believes was mandated by MDOC Policy Directive 05.01.130 and Mich. Admin R. 791.4401(2), because he had served at least three years of his controlling sentence. RUM Tabor denied his request. Plaintiff filed a grievance about the issue, and in response to the grievance, Tabor allegedly threatened to transfer Plaintiff to another Level IV facility. On June 8, 2010, Warden Lafler signed a form approving Plaintiff's Level IV security classification. The form, which was prepared by ARUS Klatt, contained inaccurate information about Plaintiff's controlling sentence.[4] On July 6, 2010, ARUS Brinkley corrected the security classification form, making Plaintiff a Level II inmate, but Brinkley refused to transfer Plaintiff to Level II housing until September 2010. Thus, Plaintiff contends that he was wrongly held in Level IV housing from April to September 2010.

---

[3]In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and segregation. MDOC Policy Directive 05.01.130 ¶ B (effective Dec. 31, 2007); *accord* MDOC Policy Directive 05.01.130 ¶ B (effective Nov. 1, 2010).

[4]Apparently, one criterion on the MDOC's form for determining a prisoner's classification level is whether the prisoner is within seven years of his earliest release date or has served more than three years of his controlling sentence. Klatt allegedly identified the wrong sentence as the controlling sentence.

- Prison transfers. On June 8, 2010, the day that Warden Lafler approved Plaintiff's Level IV security classification, Plaintiff was transferred to ECF. In December 2010, Plaintiff was transferred to KCF. ECF and KCF are located farther from his family than DRF; thus, relocation to those facilities hindered his family's ability to visit him and to assist him with an application for a writ of habeas corpus that was pending in the Eastern District of Michigan. Plaintiff claims that the transfers were acts of retaliation for his April 2010 grievance regarding his security classification and his March 2010 complaint about his misconduct proceedings. In addition, he claims that his transfers violated his rights to equal protection and substantive due process, and Rule 23(a) of the Federal Rules of Appellate Procedure.

- Adverse reaction to Tegretol. Plaintiff experienced an adverse reaction to Tegretol, a medication prescribed by Nurse Rogers to alleviate pain stemming from Plaintiff's gunshot wounds.[5] On the morning of August 4, 2011, Plaintiff woke with swollen lips, a dry throat, and a body temperature of 99 degrees. When he went to the healthcare unit, he also complained about a loss of taste, foot pain and itchy hands. Healthcare staff believed that he had a strep infection, so they gave him some "shots" and "allergy tablets" and told him to return if his symptoms worsened. (Compl., docket #1, Page ID#23.) Over the next several days, Plaintiff's temperature continued to rise, he started having trouble swallowing, and the pain in his feet became so intense that he could not walk. After he collapsed in his

---

[5] In a motion for reconsideration (docket #16), Plaintiff contends that Defendant Rogers prescribed Tegretol because an opiate-based pain medication would be too expensive; she told him that it would be cheaper to "experiment" with an anti-convulsant like Tegretol. (Mot. for Relief from J., docket #16, Page ID#170.)

unit, he was transferred to a hospital for emergency care. Plaintiff remained hospitalized for almost a month to treat what was diagnosed as Stevens-Johnson syndrome. When Plaintiff finally returned to KCF, he had boils covering most of his body. He asked for the boils to be treated, but was told that they would resolve on their own and that PHS/CMS does not provide treatment for conditions that are merely cosmetic. Plaintiff claims that healthcare staff were negligent and/or deliberately indifferent to his needs when they failed to properly diagnose his condition, failed to provide prompt treatment for his condition, and then refused to treat his boils.

- <u>Treatment for pain</u>. Plaintiff underwent surgery on September 11, 2012, to remove a tumor in his back. Before and after the surgery, healthcare staff at KCF refused to provide adequate medication to alleviate his pain. For instance, Plaintiff's surgeon prescribed Tylenol 3 for pain relief while Plaintiff recovered from surgery, but healthcare staff at KCF would offer only Tylenol or Motrin. In addition, the medication he receives to manage pain stemming from his gunshot wounds–Tylenol, Naproxen and aspirin–are not adequate, but healthcare staff refuse to provide anything stronger, like Vicodin. Plaintiff asserts that Corizon (formerly PHS and CMS) has a policy of not providing opiate-based pain medication. Corizon's policy was part of the reason why Nurse Rogers prescribed Tegretol for Plaintiff's gunshot wounds.

As relief for the foregoing claims, Plaintiff seeks damages. In addition, he seeks a preliminary injunction to transfer him to another prison facility closer to Detroit, Michigan.

**Discussion**

    I.       Statute of Limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[6]

The Court received Plaintiff's complaint on August 6, 2014, but he signed the complaint on July 31, 2014. Under Sixth Circuit precedent, a *pro se* prisoner's complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Furthermore, courts generally assume that a prisoner hands over the complaint for mailing on the date it is signed. *Id.* Thus, Plaintiff's complaint is deemed filed on July 31, 2014. Consequently, any of Plaintiff's claims that accrued prior to July 31, 2011 are not timely.

The bulk of Plaintiff's claims accrued prior to July 31, 2011, including his claims regarding

---

[6] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

the MRSA infection, the loss of his job, the misconduct conviction, the denial of reclassification, and the allegedly retaliatory prison transfers. All of these events took place in 2010 or earlier. Plaintiff had reason to know of the harms done to him when these events occurred. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Furthermore, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002). Consequently, the foregoing claims are barred by the three-year statute of limitations.

An action may be dismissed for failure to state a claim where the "allegations . . . show that relief is barred by the applicable statute of limitations[.]" *Jones v. Bock*, 549 U.S. 199, 215 (2007). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the claim is appropriate. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at **1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000).[7] Accordingly, the claims involving conduct occurring prior to July 31, 2011 will be dismissed. Because the only allegations about Defendants Lafler, Tabor, Klatt, Curtin, and Brinkley concern claims

---

[7]Plaintiff has had an opportunity to respond to the Court's conclusion that these claims are time-barred. In a motion for reconsideration (docket #16), Plaintiff asserted several reasons why the Court cannot, or should not, dismiss any of his claims at this stage of the proceedings based on the statute of limitations. The Court rejected those arguments in a separate opinion on that motion.

that are time-barred, they will be dismissed from the action.

In contrast, Plaintiff's claims against Defendants Corizon and Rogers involve allegedly inadequate healthcare for Plaintiff since August 2011, including the incident when Plaintiff was prescribed Tegretol by Nurse Rogers and suffered an adverse reaction to it, and the inadequate treatment for pain since that time due to Corizon's policy of not providing opiate-based pain medication. These claims accrued no earlier than August 2011 and are not time-barred. Thus, the Court will determine whether they are subject to dismissal for other reasons.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

At this stage of the proceedings, the Court concludes that Plaintiff states at least one plausible Eighth Amendment claim against both Corizon and Nurse Rogers.

### III. Preliminary Injunction

Plaintiff requests "emergency injunctive relief" (Compl., docket #1, Page ID#32), which the Court construes as a request for a preliminary injunction. Specifically, Plaintiff requests transfer to another prison facility that is located closer to Detroit (where his family is located), particularly one that can accommodate his need for more effective pain medication.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the

likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. First, any claim regarding the propriety of transfers that moved him away from his family are barred by the statute of limitations. Because he cannot succeed on his challenge to those transfers, it makes no sense for the Court to grant preliminary injunctive relief to ameliorate the harm resulting from them.

Second, to the extent that Plaintiff seeks transfer to another facility in order to receive additional pain medication that is not available at KCF, it is not at all clear that Plaintiff will succeed on the merits of his Eighth Amendment claim regarding the failure to provide such medication. Plaintiff does not

complain that Corizon's policy deprives him of all treatment for his pain; instead, he complains that it prevents him from obtaining more effective medication. To succeed on his Eighth Amendment claim, Plaintiff will have to demonstrate that, even with the medication he has been provided, his pain is sufficiently serious to support an Eighth Amendment claim. At this stage of the proceedings, there is no evidence of the extent of Plaintiff's pain; thus, Plaintiff has not shown a likelihood of success.

As for irreparable harm, it is not clear how the requested injunction (transfer to another facility) will address his pain. Presumably, Corizon's policy applies in every facility where it provides medical care. Plaintiff does not identify a facility where he could receive the medication he desires.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning the housing and proper treatment of prisoners are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. Accordingly, Plaintiff's request for preliminary relief will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed, in part, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because all claims concerning events occurring prior to August 2011 are untimely. Consequently, Defendants Lafler, Tabor, Klatt, Curtin, and Brinkley will be dismissed.

The Court will order service of the complaint on Defendants Corizon and Rogers. In addition, Plaintiff's request for preliminary injunctive relief will be denied.

An amended order consistent with this Amended Opinion will be entered.


Dated:  April 17, 2015                             /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   Chief United States District Judge